James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991

Gene J. Stonebarger, State Bar No. 209461
Stonebarger Law A Professional Corporation
75 Iron Point Circle, Suite 145
Folsom, California 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141

Attorneys for Plaintiff and the Class
(Additional counsel appear on the signature page)

FILED
'10 APR 29 PM 1:29
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: MTB        DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN VESS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: **'10 CV 0920 JAH** RBB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br>1. **VIOLATION OF TILA AND REGULATION Z;**<br>2. **DECLARATORY AND INJUNCTIVE RELIEF;**<br>3. **BREACH OF CONTRACT;**<br>4. **VIOL. OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.; AND**<br>5. **VIOL. OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.**<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff, on behalf of himself, and all others similarly situated, alleges upon personal knowledge as to himself and his acts, and as to all other matters upon information and belief, as follows:

-1-
CLASS ACTION COMPLAINT

## I. INTRODUCTION

1. This case is about Countrywide Financial Group's, now operating as Bank of America, N.A., ("Defendant") illegal and improper reduction and suspension of credit limits on home equity lines of credit ("HELOCs") across the country in a thinly-veiled and unlawful attempt to limit its exposure to the risk of collapse in the United States housing market and to rid itself of below-market interest rate loans. Defendant broke its promises to homeowners that were depending on their HELOCs and broke the law in the process.

2. Defendant originates, services, and owns billions of dollars worth of prime and subprime mortgages, including the HELOCs at issue in this Complaint. Each member of the proposed class had a HELOC that Defendant either unfairly or unlawfully reduced or suspended without justification. Plaintiffs bring this class action on behalf of themselves and the putative class for injunctive and declaratory relief, actual damages and attorneys' fees under the Truth-in-Lending Act (15 U.S.C. §1640(a)) ("TILA"), damages for breach of contract and breach of the implied covenants of good faith and fair dealing, and restitution under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17203 ("UCL").

## II. NATURE OF ACTION

3. As early as 2008, Defendant began sending form letters to thousands of homeowners indicating that their HELOCs were being summarily decreased or suspended because of a purported decline in their home values. Many of these homes had not actually suffered a significant decline in value, but Defendants nevertheless suspended or reduced the credit limits on the corresponding HELOCs. Defendant never informed Plaintiff how it determined his home value had significantly declined. Instead, it informed Plaintiff that if he sought to reinstate his credit limit he would have to obtain a formal appraisal at his own expense.

4. On information and belief, for the purposes of the suspensions and reductions of its HELOCs, Defendant determined its borrowers' home values through dubious automated valuation models ("AVMs"), which are computerized econometric models tied to a database of information related to home values. These self-serving, secret AVM's were specifically tailored to serve Defendant's unlawful purpose of manufacturing a basis to decrease or suspend

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

homeowners' HELOC loans to protect Defendant's own financial interests associated with the downside risk of the declining housing market and to get rid of the low interest rate HELOC loans. As a result, Defendant sent its suspension and reduction letters to many homeowners, including the Plaintiff, whose home values had not declined significantly and reduced the credit limits on the corresponding HELOCs.

5. On information and belief, the basis of Defendant's letters was an AVM that used unreliable or inaccurate data. The home loan industry made widespread use of the AVMs in underwriting the loans that led to the current mortgage meltdown. Indeed, the abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and correspondingly larger origination and/or transaction fees) has been widely criticized. AVMs remain just as susceptible to manipulation and gross error now that banks are aggressively seeking to reduce their outstanding credit lines by falsely devaluing such properties.

6. Defendant's systematic mass reduction and suspension of its HELOCs was unlawful and deceptive. Federal regulators have warned financial institutions that it is a direct violation of federal law to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." Defendant's misuse of its secret, self-serving AVMs failed to account for individual property characteristics and other critical variables, thereby preventing Defendant from having a sound factual basis for the HELOC suspensions and reductions and which deprived homeowners of their lawful right to an individual determination of whether their homes had suffered a significant decline in value.

### III.   JURISDICTION AND VENUE

7. Defendant is a national banking association whose head offices are in North Carolina, and is a citizen of North Carolina under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant. On information and belief, the aggregate of these claims exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). This Court further has federal question

jurisdiction under 28 U.S.C. § 1331, as the action arises in significant part under Regulation Z of TILA, 15 U.S.C, § 1601 et seq., 12 C.F.R. § 226.5b. Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Plaintiffs incurred their injury, in California (and, specifically, the Southern District of California).

9. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2).

## IV. THE PARTIES

10. **Plaintiff**: Plaintiff resides in San Diego, California. In July 2003, Defendant originated a $60,000 HELOC for Plaintiff that was secured by his personal residence. Several years later, Defendant suspended Plaintiff's HELOC from further draws.

11. **Defendant**: Defendant is a national banking association with its main offices in North Carolina. Defendant is one of the country's largest banks and has offices in this state and throughout the country.

12. **DOE Defendants**: Plaintiff is ignorant about the true names of defendants sued as DOES 1 through 50, inclusive, and their wrongful conduct, and therefore sues these defendants by fictitious names. Plaintiff will seek Court leave to amend this complaint to allege their true names and capacities when ascertained. Additionally, Plaintiff alleges on information and belief that at all relevant times, DOES 1-50, inclusive, were defendants' agents, servants, employees, representatives, partners, and related or affiliated entities, and in doing the things hereinafter mentioned, were acting in the course and scope of their agency, employment, or retention with defendants' permission, consent, authority and ratification.

13. **Defendants' Aiding and Abetting**: All defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other defendants in breaching their obligations to Plaintiff and the Class and Subclasses, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, defendants each acted with an awareness of the primary wrongdoing and realized that its conduct would substantially assist the accomplishment

of the wrongful conduct, wrongful goals and wrongdoing.

## V. PLAINTIFF'S INDIVIDUAL ALLEGATIONS

14. Plaintiff purchased his home for $600,000. He took out both a first mortgage for $480,000 and a HELOC for $60,000 on his home through Defendant. Plaintiff obtained and anticipated using his HELOC for personal and home related expenses. After 2003, Plaintiff maintained a zero balance on the HELOC.

15. Communications with Defendant's agents and representatives have revealed that Defendant claims that in January 2008, Defendant mailed Plaintiff a letter indicating that it had suspended Plaintiff's HELOC from future draws effective immediately. Defendant claims that the letter stated that the suspension was due to the fact that home values are declining and that the value of Plaintiff's home had significantly declined. Defendant claims that it does not know whether the letter did or did not state what the supposed declined value was, how Defendant determined the supposed decline, what the initial home value at the HELOC origination was, what value was needed for full reinstatement of the HELOC, or any other material information related to Defendant's suspension of Plaintiff's HELOC.

16. At a later point in time, and unaware of the letter that Defendant claims it sent, Plaintiff contacted Defendant to inquire about the status of his HELOC. He was told that he could not draw any money from the HELOC and that Defendant used an automated value technique to ascertain the current value of his home. Defendant could not provide any further details on how Defendant determined the value of his home. Defendant claimed that it had sent a letter notifying Plaintiff of the suspension but could not find the letters it claimed to have sent Plaintiff.

17. Plaintiff believes that Defendant's decision to suspend his HELOC was based, at the most, on a geographic area survey covering home values in the area where Plaintiff's home was located and not on an actual assessment of Plaintiff's home value. Thus, Defendant had no reasonable justification for suspending Plaintiff's HELOC.

18. Plaintiff sustained a variety of damages from Defendant's wrongful acts. By suspending Plaintiff's HELOC, Defendant denied Plaintiff access to $60,000, thereby preventing

Plaintiff from enjoying the benefits of his contractual relationship with Defendant. Plaintiff agreed to pay an annual fee in return for access to a $60,000 HELOC. Plaintiff never intended, nor agreed, to pay the annual fee in exchange for essentially giving Defendant an option to extend credit only if Defendant wanted to do so. When Defendant suspended Plaintiff's credit limit, it frustrated and extinguished Plaintiff's ability to realize the benefit of the bargain Plaintiff expected to realize from the contract and that fee.

19. Plaintiff's HELOC with Defendant was his only line of credit. Defendant's unilateral suspension of Plaintiff's HELOC eliminated the credit Plaintiff had available to him to the outstanding balance on that credit. In turn, on information and belief, Defendant's acts drove up his Credit Utilization Rate, a major component of his credit rating. Defendant's unlawful suspension damaged Plaintiff's credit rating and increased the cost of credit to him. In addition, Defendant's acts eliminated Plaintiff's access to credit when he, in fact, needed money, which increased the opportunity costs of Plaintiff's spending.

20. At bottom, Plaintiff entered into a contractual relationship with Defendant for, among other things, a $60,000 HELOC. Defendant froze Plaintiff's HELOC without the required sound factual basis. Defendant failed to assess Plaintiff's actual home value, but instead relied on a general area survey, if that. Plaintiff's harm and damages are continuing in nature.

21. On information and belief, Defendant did not send the letters or notices it claims to have sent; thus, Plaintiff did not discover Defendant's actions as alleged herein until within one year of the filing of this Complaint.

## VI. CLASS ALLEGATIONS

22. **Class and Subclasses**: Plaintiff brings this lawsuit on behalf of an ascertainable nationwide class and subclasses under Federal Rule of Civil Procedure 23(b):

    **a.**     **Class**: The class consists of:

> All persons who have or had a HELOC from Defendant that was reduced or suspended due to a purported significant decline in the value of the property securing the HELOC ("Class" or "Class Members").

  b. **Subclass A**: Subclass A consists of:

All Class Members who currently have HELOCs with Defendant and who's HELOCs have been reduced or suspended by Defendant purportedly due to a significant decline in the value of the property securing the HELOC ("Injunctive Relief Subclass").

  c. **Subclass B**: Subclass B consists of:

All Class Members who paid an annual fee to maintain their HELOC account with Defendant ("Annual Fee Subclass").

23. **Excluded from Class and Subclasses**: Excluded from the Class and Subclass A Subclass B, and Subclass C ("Subclasses") are (i) any Judge or Magistrate presiding over this action and their family members; (ii) Defendants, and their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest; (iii) persons who properly and timely request to be excluded; and (iv) the legal representatives, successors or assigns of any such excluded persons or entities. Plaintiff anticipates the need to potentially amend the class definition pending discover.

24. **Numerosity**: Members of Class and Subclasses ("Members") are so numerous that joinder of all Members is impracticable. Defendant sent its generic credit line freeze letters (or substantially similar letters) to thousands of HELOC borrowers, and a substantial percentage of the recipients of these letters fall into the definition of one or more of the Subclasses. While the exact numbers of Members are unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and its agents.

25. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Members is impracticable and the likelihood of individual members prosecuting separate claims is remote. Individual Members do not have a significant interest in controlling litigation because their individual damages likely will be relatively small. Relief concerning Plaintiff's rights under the laws alleged herein and with respect to the Class and Subclasses as a whole would be appropriate. Plaintiff knows of no difficulty to be encountered in this case's management that would preclude maintenance as a class action.

///

26. **Predominance and Commonality**: Common questions of law and fact exist as to all Members and predominate over questions affecting only individual Members. The common questions include:

   a. What were Defendant's criteria for reducing the credit limits on its HELOCs;

   b. What were Defendant's methods for valuing the homes securing the HELOCs which credit limits it reduced;

   c. Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs violated Regulation Z and/or TILA;

   d. Whether Defendant's reduction of, and/or failure to reinstate, the credit limits breached the terms of the HELOC agreements;

   e. Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs was unfair and/or illegal and constituted a violation of California's UCL;

   f. Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs diminished the benefit of the bargain its customers derived from paying annual fees to maintain their HELOC accounts;

   g. Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs while assessing and collecting annual account fees was unfair and/or illegal and constituted a violation of California's UCL; and

   h. Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

27. **Typicality**: Plaintiff's claims are typical of other Members' claims because Plaintiff and the Class were exposed to virtually identical conduct and sustained damages from that conduct. The California and federal laws under which Plaintiff's claims arise do not conflict with the laws of any other state in any material way.

28. **Adequacy**: Plaintiff can fairly and adequately represent the Class and Subclasses' interests; Plaintiff has no conflicts of interest with other Members, and has retained counsel competent and experienced in class action and civil litigation. Further, Defendant does

not have a defense unique to Plaintiff.

29. **Policies Generally Applicable to the Class.** This class action also is appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making final injunctive relief or corresponding declaratory relief appropriate. Defendant's policies apply and affect class members uniformly, and Plaintiff's challenge to these policies hinges on Defendant's conduct, not on facts or law applicable to only Plaintiff.

### FIRST CLAIM FOR RELIEF
(For Violation of the TILA and Regulation Z — Actual and Statutory Damages)
On Behalf of the Class

30. Plaintiff incorporates the above allegations by reference.

31. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) restrict Defendant from changing any of the terms of a mortgage or HELOC, including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). The exception relevant here permits Defendant to reduce the credit limits on its HELOCs "during any period in which . . . [t]he value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

32. The Federal Reserve Board Official Staff Commentary to Regulation Z ("the Official Staff Commentary") defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value . . . ) is reduced by fifty percent." The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to *"reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account."*

/ / /

33. Before reducing the limits of its customers' HELOCs, Defendant had an obligation to have a sound factual basis for concluding that the value of the homes had actually declined significantly. *See* 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A); FDIC June 26, 2008 Financial Institution Letter (FIL-58-2008), *Home Equity Lines of Credit, Consumer Protection and Risk Management Consideration When Changing Credit Limits and Suggested Best Practices*, 2. Instead, on information and belief, Defendant knowingly and intentionally used certain valuation methods that drastically devalued the Class members' properties in order to justify the blanket suspensions of their HELOCs.

34. Additionally, because a "significant decline" requires a consideration of the property's available (unencumbered) equity, Defendant had an obligation to calculate and consider the available equity in each property in order to determine whether the available equity had suffered a significant decline within the meaning of Regulation Z. *See* Official Staff Commentary to 12 C.F.R. 226.5b(f)(3)(vi), Section 6. Such a calculation necessarily required Defendant to determine the existence of any other mortgages or encumbrances on the property and, if so, whether the balance of any other such mortgages had actually decreased since the initial creation of the HELOC. Defendant failed to make this required inquiry.

35. Defendant violated TILA and Regulation Z by suspending and reducing the Class members' HELOCs without first determining the level of available equity in their property, which has not significantly declined within the meaning of Regulation Z, due to a significantly higher home value than initially determined by Defendant's AVMs, and due to the Class members paying down the balances on their first mortgages. Upon information and belief, Defendant intentionally ignored or disregarded this information before it chose to suspend the Class members' HELOCs and when deciding whether to reinstate suspended or reduced HELOCs. On further information and belief, neither the Plaintiffs' nor the Class members home values or equity levels had significantly declined so as to warrant reductions or suspensions

36. Defendant's suspension or reduction of Plaintiffs HELOCs, and subsequent failure to reinstate them raises three implications:

///

    a. Defendant's AVMs are inherently flawed because they undervalue individual properties, and cannot be used to justify reductions of the HELOCs;

    b. Defendant failed to conduct an individual inquiry, or consider current mortgage balances in determining whether a specific home had suffered a significant decline in value; and

    c. Defendant ignored subsequent higher valuations obtained through the AVMs or actual appraisals, which confirmed that homeowners' home values were no longer suffering from a substantial decline, or, indeed, that they had never suffered a substantial decline in the first instance.

37. On information and belief, Defendant 1) used inaccurate self-serving AVMs to reduce the credit limits on the Class members' HELOCs, failed to continue to monitor the value of the Class members' homes, and insisted that the Class members obtain formal appraisals to reinstate their HELOCs and/or 2) used inherently faulty AVMs that undervalued the Class members' home to justify the reduction of the credit limits on the Class member's HELOCs.

38. Finally, the Official Staff Commentary to Regulation Z, 226.5b(f)(3)(i), provides that a bank may not impose "'triggering events' or responses that the regulation expressly addresses in a manner different from that provided in the regulation." Namely, "a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline." *Id.*

39. In direct violation of this provision, Defendant unlawfully suspended the Class members' HELOCs in response to insignificant declines in home values or where the value of the underlying property had not declined at all. Alternatively, when the value of the homes securing the HELOCs for Plaintiff and other Class members was no longer in a significant decline from the original valuation, Defendant failed to reinstate their credit limits.

40. Defendant's reduction of and/or refusal to reinstate the credit limit for Plaintiffs' and other Class members' HELOCs violated and continues to violate TILA and Regulation Z.

41. Defendant's violations of TILA and Regulation Z damaged Plaintiffs and the other Class members. These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

42. Plaintiffs, on their own behalf and behalf of the other Class members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

## SECOND CLAIM FOR RELIEF
### (For Violation of the TILA and Regulation Z — Declaratory and Injunctive Relief) On Behalf of Injunctive Relief Subclass

43. Plaintiff incorporates the above allegations by reference.

44. Plaintiff still maintains a HELOC with Defendant though it was suspended from future draws in January 2008 based on the purported significant decline in their home value. As fully described above, no such significant decline has occurred.

45. As fully described above, Defendant violated TILA and Regulation Z by using grossly inaccurate valuation methods to undervalue the properties and justify blanket suspensions and reductions of the HELOCs for Plaintiff and other members of the Injunctive Relief Subclass.

46. Defendant further violated TILA and Regulation Z by suspending or reducing the HELOCs in the absence of the significant decline in homes securing the HELOCs and without having a sound factual basis for concluding that there had been any such significant decline.

47. The Injunctive Relief Subclass members and Defendant have adverse legal interests, and there is a substantial controversy between the Injunctive Relief Subclass and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass suspension and reduction of HELOCs violates TILA and Regulation Z.

48. Plaintiff, on their own behalf and on behalf of the other Injunctive Relief Subclass members, seek:

    a. a declaratory judgment under 28 U.S.C. § 2201 that Defendant violated TILA and Regulation Z by:

        i) using grossly inaccurate valuation methods to undervalue the properties and justify blanket suspensions and reductions of the HELOCs; and

    ii) suspending or reducing the HELOCs despite the properties securing the HELOCs not having declined significantly and despite Defendant not having a sound factual basis for concluding that there had been any such significant decline; and

 b. full reinstatement of the credit limits on all the HELOCs that:

    i) have been unlawfully reduced or suspended; or

    ii) have not been reinstated where the reinstatement was warranted.

### THIRD CLAIM FOR RELIEF
### (For Breach of Contract)
### On Behalf of the Class

49. Plaintiff incorporates the above allegations by reference.

50. Plaintiffs and the other Class members obtained HELOCs from Defendant. The terms of these HELOC agreements constitute a contract between the Class members and Defendant.

51. The HELOC agreements contain a term which purports to provide Defendant the discretion to reduce the credit limit during any period in which the value of the home securing the HELOC declines significantly below the home's appraised value. Defendant drafted the terms of the HELOC agreements, and any ambiguity in the phrase "declines significantly" must be strictly construed against Defendant.

52. Plaintiffs and the other Class members performed under their HELOC agreements with Defendant and made all payments due to Defendant under the HELOC agreements.

53. The credit limit under the Class members' HELOC agreements was a material term of the contract between the Class members and Defendant. Defendant materially breached the terms of the HELOC agreements by reducing the credit limit for Plaintiffs' and other Class members' HELOCs because their home values had not actually declined significantly. Alternatively, Defendant materially breached the terms of the HELOC agreements by failing to reinstate the credit limits for Plaintiffs' and other Class members' HELOCs after the value of the homes securing the HELOCs was no longer in a significant decline and/or when Defendant became aware or should have become aware that there was not a then-present significant decline in value.

///

54. To the extent that any of the Class members' HELOCs contain any term purporting to allow Defendant to unilaterally reduce the credit limit of TILA Class members without complying with TILA and Regulation Z, such terms are void and violate public policy.

55. Defendant's breach of contract damaged Plaintiffs and the other Class members. These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

56. Plaintiffs, on their own behalf and behalf of the other Class members, seek damages for Defendant's breach of contract, as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**FOURTH CLAIM FOR RELIEF**
**(For Violation of California's UCL, Cal. Bus. & Prof. Code § 17200)**
**On Behalf of the Class**

57. Plaintiff incorporates the above allegations by reference.

58. Defendant's reduction of and/or failure to reinstate the original credit limits for Plaintiffs and other Class members' HELOCs violated TILA and Regulation Z. Defendant sent a form letter to each of the Class members that stated the suspension or reduction of the credit limits was due to the significant decline in the value of the homes that secured the HELOCs.

59. Defendant's form letters were deceptive and untrue because they were based on AVMs that recklessly or intentionally undervalued the homes securing the Class members' HELOCs. On information and belief, Defendant either intentionally or recklessly used AVMs that did not have adequate safeguards to ensure their integrity or accuracy to falsely justify reducing Plaintiffs' and other Class members' HELOC limits. Moreover, Defendant's misuse and/or mishandling of these AVMs violated TILA and Regulation Z inasmuch as these particular AVMs were not sufficient, reliable, or adequate grounds to justify Defendant's reduction of the HELOC limits.

60. In light of Defendant's actions, its reduction of and/or failure to reinstate the Class members' HELOC limits was unfair because it caused a substantial injury to consumers and

competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Defendant's reduction of and/or failure to reinstate the Class members' HELOC limits offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC market.

61. These unlawful, deceptive, and unfair acts and practices are unfair competition in violation of the UCL. Defendant's violations of the UCL caused Plaintiffs and the other Class members injury in fact, through lost money and property.

62. Defendant's violations of the UCL damaged Plaintiffs and the other Class members, as Defendant obtained money and/or property that rightfully belonged to Plaintiffs and the Class members, including the lost benefit of the bargain on annual account fees, and lost use of the funds available for credit.

63. Plaintiffs, on their own behalf and behalf of the other Class members, seek restitution of any money or property obtained by Defendant from Plaintiffs and the Class members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**FIFTH CLAIM FOR RELIEF**
**(For Violation of California's UCL, Cal. Bus. & Prof. Code § 17200)**
**On Behalf of Annual Fee Subclass**

64. Plaintiff incorporates the above allegations by reference.

65. The Annual Fee Subclass members obtained HELOCs from Defendant under the terms of the HELOC agreements. According to these HELOC agreements, Plaintiff and the other Annual Fee Subclass members paid Defendant an annual fee to maintain their HELOC accounts. When Defendant reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

66. On information and belief, Defendant has used AVMs to justify its reduction of the credit limits for Plaintiff and other Annual Fee Subclass members' HELOCs. On information and belief, Defendant violated TILA and Regulation Z and breached the implied covenant of good faith

and fair dealing in their HELOC agreements by either intentionally or recklessly using AVMs that they knew or should have known lacked adequate safeguards to ensure their integrity or accuracy to justify reducing Plaintiff's and other Annual Fee Subclass members' HELOC limits. Defendant's use of AVMs deprived Plaintiff and the Annual Fee Subclass members of the benefit of the bargain associated with Defendant's annual fee.

67. The imposition and failure to refund the annual fee was unfair because Defendant's reduction of Plaintiff's and other Annual Fee Subclass members' HELOC limits and use of AVMs deprived them of the benefit of the bargain associated with Defendant's annual fee. This caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Defendant's imposition and failure to refund the annual fee was premised on a violation of TILA and Regulation Z and offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

68. These unfair acts and practices constitute unfair competition in violation of the UCL.

69. Defendant's violations of the UCL damaged Plaintiff and the other Annual Fee Subclass members. Defendant's violations of the UCL caused Plaintiff and the other Annual Fee Subclass members injury in fact, through lost money and property, including the lost benefit of the bargain associated with Defendant's annual account fees.

70. Plaintiff, on his own behalf and behalf of the other Annual Fee Subclass members, seek restitution of any money or property gained by Defendant from Plaintiff and the other Annual Fee Subclass members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

///
///
///
///

## PRAYER FOR RELIEF

Plaintiff, the Class and Subclasses pray for judgment against Defendants as follows:

    A.    Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class and Subclasses;

    B.    Awarding statutory damages, actual damages, attorneys' fees, and costs under 15 U.S.C. § 1640(a)(2)(B) for the Class on the First Claim for Relief;

    C.    Declaring Defendant's actions alleged herein unlawful, and directing Defendant to reinstate the credit limits on all unlawfully suspended or reduced HELOCs of Injunctive Relief Subclass members on the Second Claim for Relief;

    D.    Awarding actual damages for the Class on the Third Claim for Relief, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees;

    E.    Restitution on the Fifth Claim for Relief for all money or property obtained by Defendant from Plaintiffs and the other Class members through Defendant's unfair competition, including annual account fees and lost use of the funds available for credit;

    F.    Restitution for the Annual Fee Subclass under the Sixth Claim for Relief for all money or property obtained by Defendant from Plaintiff and the other Annual Fee Subclass members through Defendant's unfair competition, including Defendant's annual account fees;

    G.    Awarding reasonable attorneys' fees for Plaintiffs and their counsel;

    H.    Awarding pre- and post-judgment interest; and

    I.    Granting such other and further relief as the Court may deem just and proper.

///

///

///

# JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: April 29, 2010

HARRISON PATTERSON & O'CONNOR LLP

By: _____
James R. Patterson (SBN 211102)
Alisa A. Martin (SBN 224037)
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: (619) 756-6990
Fax: (619) 756-6991
jpatterson@hpolaw.com
amartin@hpolaw.com

Gene J. Stonebarger (SBN 209461)
STONEBARGER LAW, APC
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Tel: (916) 235-7140
Fax: (916) 235-7141
gstonebarger@stonebargerlaw.com

Sean Reis (SBN 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Tel: 714-352-5200
Fax: 714-352-5201
sreis@edelson.com

Jay Edelson (*pro hac vice* pending)
Steven L. Lezell (*pro hac vice* pending)
EDLESON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
slezell@edelson.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
BRYAN VESS, on behalf of himself and all others similarly situated

## DEFENDANTS
BANK OF AMERICA, N.A.; and DOES 1 through 50, inclusive

FILED
10 APR 29 PM 1:29
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: MTB DEPUTY

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
James R. Patterson, Esq./Alisa A. Martin, Esq.
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: 619-756-6990 / Fax: 619-756-6991

Attorneys (If Known)

'10 CV 0920 JAH    RBB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane / 362 Personal Injury— Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability / 365 Personal Injury— Product Liability | 625 Drug Related Seizure of Property 21 USC 881 |  | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment |  | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 330 Federal Employers' Liability | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 340 Marine / PERSONAL PROPERTY | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
|  | 345 Marine Product Liability / 370 Other Fraud | 690 Other |  | 490 Cable/Sat TV |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 371 Truth in Lending | LABOR | SOCIAL SECURITY | 810 Selective Service |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 380 Other Personal Property Damage | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| [X] 190 Other Contract | 360 Other Personal Injury / 385 Property Damage Product Liability |  | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 195 Contract Product Liability |  | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise |  | 730 Labor/Mgmt.Reporting & Disclosure Act | 864 SSID Title XVI | 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS |  | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 210 Land Condemnation | 441 Voting / 510 Motions to Vacate Sentence | 740 Railway Labor Act |  | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment / Habeas Corpus: | 790 Other Labor Litigation |  | 894 Energy Allocation Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations / 530 General | 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | 895 Freedom of Information Act |
| 240 Torts to Land |  |  | 870 Taxes (U.S. Plaintiff or Defendant) | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 245 Tort Product Liability | 444 Welfare / 535 Death Penalty |  |  |  |
| 290 All Other Real Property | 445 Amer. w/Disabilities - Employment / 540 Mandamus & Other | IMMIGRATION | 871 IRS—Third Party 26 USC 7609 |  |
|  | 446 Amer. w/Disabilities - Other / 550 Civil Rights | 462 Naturalization Application |  | 950 Constitutionality of State Statutes |
|  | / 555 Prison Condition | 463 Habeas Corpus – Alien Detainee |  |  |
|  | 440 Other Civil Rights | 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1348, 28 U.S.C. § 1332(d)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1367

Brief description of cause:
illegal and improper reduction and suspension of credit limits on home equity lines of credit

## VII. REQUESTED IN COMPLAINT:
[X] CHECK IF THIS IS A CLASS ACTION demanded in complaint: UNDER F.R.C.P. 23

DEMAND $ IN EXCESS OF 5,000,000.00

CHECK YES only if JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: April 29, 2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 12974   AMOUNT $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

WB 04-29-10

American LegalNet, Inc.
www.FormsWorkflow.com

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS012974
Cashier ID: mbain
Transaction Date: 04/29/2010
Payer Name: CALEXPRESS
---------------------------------
CIVIL FILING FEE
 For: VESS V BANK OF AMERICA
 Case/Party: D-CAS-3-10-CV-000920-001
 Amount:         $350.00
---------------------------------
CHECK
 Check/Money Order Num: 55089
 Amt Tendered:  $350.00
---------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:       $0.00


There will be a fee of $45.00
charged for any returned check.
```