UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN VESS, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 50, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Civil No.   10cv920-AJB(WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE; GRANTING PLAINTIFF'S AND DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>**(Doc. Nos.  8, 9, 8-2, 11-1.)** |

　　　　Plaintiff Bryan Vess filed a purported class action complaint against Defendant Bank of America ("BANA") for improperly reducing or suspending credit limits on home equity lines of credit ("HELOCs") in violation of the Truth in Lending Act ("TILA") and its implementing regulation, Regulation Z, 12 C.F.R. § 226 and other state law claims.  Defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed an opposition and Defendant filed a reply.  The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1).  After a review of the briefs, supporting documentation, and applicable law, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.  The Court also GRANTS Defendant's motion to strike; and GRANTS Plaintiff's and Defendant's request for judicial notice.

**Procedural Background**

　　　　On April 29, 2010, Plaintiff filed a class action complaint for violation of TILA and its

implementing regulation, Regulation Z.  (Dkt. No. 1.)  Plaintiff also allege breach of contract; and violations under California Business & Professions Code section 17200.  (Id.)  On July 13, 2010, Defendant filed a motion to dismiss the complaint and a motion to strike allegations regarding Doe Defendants.  (Dkt. Nos. 8, 9.)  On August 30, 2010, Plaintiff filed an opposition to both motions.  (Dkt. Nos. 10, 11.)  On September 3, 2010, Defendant filed a reply.  (Dkt. Nos. 12, 13.)  On November 18, 2010, Defendant filed a supplemental notice of new case law in support of its motion to dismiss the complaint.  (Dkt. No. 16.)  On March 25, 2011, the case was transferred to the undersigned judge.   On June 22, 2011, Defendant filed a second supplemental notice of new case law in support of its motion to dismiss the complaint.  (Dkt. No. 19.)  On July 13, 2011, Plaintiff filed a supplemental notice of new case law in support of its opposition to Defendant's motion to dismiss the complaint.  (Dkt. No. 21.)

**Factual Background**

According to the Complaint, Bank of America, formerly known as Countrywide Financial Group, originates, secures and owns billions of dollars worth of prime and subprime mortgages, including home equity lines of credit ("HELOC").  (Compl. ¶¶ 1-2.)  Plaintiff alleges that Defendant illegally and improperly reduced or suspended credit limits on HELOCs without justification across the country in order to limit its exposure to the risk of collapse in the United States housing market and to rid itself of below-market interest rate loans.  (Id.)

Plaintiff bought his home for $600,000.  (Id. ¶ 14.)  He took out a first mortgage for $480,000 and a HELOC for $60,000 on his home through Defendant.  (Id.)  After 2003, Plaintiff maintained a zero balance on the HELOC.  (Id.)

According to the HELOC agreement and in the disclosure entitled "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", BANA can reduce or suspend the HELOC when "the value of the Property declines significantly below its appraised value for the purposes of my Account."[1]  (Dkt. No. 8-3, D's Request for Judicial Notice, Ex. A, ¶ 11.A.(1); see also D's Request

---

[1] Review on a 12(b)(6) motion is generally "limited to the contents of the complaint."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

1 for Judicial Notice, Ex. B, p. 1.)

2    "At a later point in time, and unaware of the letter that Defendant claims it sent, Plaintiff contacted Defendant to inquire about the status of his HELOC." (Id. ¶ 16.) He was informed that he could not draw any money from the HELOC and Defendant had used an automated valuation model ("AVM") to determine the value of his home. (Id.) Defendant claimed it had sent a letter notifying Plaintiff about the suspension but it could not find the letter it claims to have sent. (Id.)

   Plaintiff's communications with Defendant's representatives revealed that in January 2008, Defendant mailed Plaintiff a letter notifying that it had suspended Plaintiff's HELOC from future draws effective immediately. (Id. ¶ 15.) The letter apparently stated that the suspension was due to the fact that home values were declining and that the value of Plaintiff's home had significantly declined. (Id.) Defendant was not sure whether the letter stated what the supposed declined value was, how Defendant determined the alleged decline, what the initial home value at the HELOC origination was, and what value was needed to reinstate the HELOC. (Id.)

   Plaintiff alleges that Defendant's suspension of his HELOC was based on a geographic area survey covering home values in the area where Plaintiff's home was located and not on an actual assessment of Plaintiff's home value. (Id. ¶ 17.) Plaintiff claims he suffered damages from being denied access to the $60,000 HELOC and from enjoying the benefits of his contractual relationship with Defendant. (Id. ¶ 18.) Plaintiff alleges that he agreed to pay an annual fee in return for access to the $60,000 HELOC. (Id.) In addition, the line of credit eliminated the credit Plaintiff had available to him and drove up his Credit Utilization rate and damaged his credit rating and increased the cost of credit to him. (Id. ¶ 19.) In addition, Defendant's acts eliminated Plaintiff's access to credit when he needed money which increased the opportunity costs of Plaintiff's spending. (Id.)

//
//

---

party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder, 450 F.3d at 448 (citations omitted). The court may consider the document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Here, the HELOC agreement and its disclosure are appropriate for the Court to consider as they are referenced in the complaint, central to Plaintiff's claim and no party has objected to the authenticity of the document attached to the motion.

# Discussion

## A. Request for Judicial Notice

Bank of America requests that the Court take judicial notice of three documents: (1) "Home Equity Credit Line Agreement and Disclosure Statement" between Plaintiff and Defendant executed around July 20, 2003; (2) "Important Terms of our Home Equity Line of Credit" disclosure between Plaintiff and Defendant executed around July 20, 2003; (3) Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Certain Claims and to Strike Certain Allegations in the United States District Court for the Northern District of Illinois in Hickman v. Wells Fargo Bank, N.A., on May 11, 2010. (Dkt. No. 8-2.)

In addition, Vess requests that the Court take judicial notice of six documents: (1) FDIC financial institutional letter, Home Equity Lines of Credit Consumer Protection and Risk Management Considerations When Changing Credit Limits and Suggested Best Practices, FDIC FIL-58-2008, June 26, 2008, 2008WL 2552743; (2) In re Citibank HELOC Reduction Litigation, 09cv350-MMC (N.D. Cal. Sept. 17, 2009); (3) Hickman v. Wells Fargo Bank, N.A., 683 F. Supp. 2d 779 (N.D. Ill. Jan. 26, 2010); (4) Wilder v. JP Morgan Chase Bank, N.A., et. al., No. 8:90cv834-DDOC-RNG (C.D. Cal. Mar. 11, 2010), slip opinion; (5) Kimball v. Washington Mutual Bank, et al., No. 09cv1261 MMA-AJB (S.D. Cal. Apr. 5, 2010), slip opinion, and (6) Wilder v. JP Morgan Chase Bank, N.A., et al., No. 8:90cv834-DDOC-RNG (C.D. Cal. Nov. 25, 2010), slip opinion. (Dkt. No. 11-1.)

A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Pleadings and other court filings are the proper subject of judicial notice and may be considered on a motion to dismiss. Mullis v. U.S. Bankr. Ct. for Dist. of Nev., 828 F.2d 1385, 1388 & n.9 (9th Cir. 1987). Since the parties have not disputed the taking of judicial notice of these documents, and the documents are subject to judicial notice, the Court GRANTS Defendant's and Plaintiff's requests for judicial notice.

//

B.  **Legal Standard Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

    **1.    Timeliness**

Defendant argues that claims one and two for violation of the TILA and Regulation Z are not timely because Plaintiff filed a complaint on April 29, 2010, over one year past the date of the alleged violation of January 2008. In opposition, Plaintiff argues that he contacted Defendant sometime after April 29, 2009 inquiring about his HELOC and that is when he learned that the suspension occurred sometime in January 2008.

A TILA cause of action must "be brought in any United States district court . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Under federal statute of limitations, the statue of limitations begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituted the alleged (violation)." NLRB v. DonBurgess Const. Corp., 596 F.2d 378, 382 (9th Cir. 1979).

1  The complaint in this case was filed on April 29, 2010. Plaintiff alleges that he contacted
2  Bank of America sometime after April 29, 2009 inquiring about his HELOC. However, the
3  Complaint does not provide a date as to when Plaintiff learned about the suspension. The complaint
4  provides the following conclusory statement: "[a]t a later point in time . . . Plaintiff contacted
5  Defendant to inquire about the status of his HELOC" and "Plaintiff did not discover Defendant's
6  actions as alleged herein until within one year of the filing of this Complaint." (Compl. ¶¶ 16, 21.)
7  It also states that in January 2008, Defendant claims it mailed Plaintiff a letter informing him about
8  the suspension. (Id. ¶ 15.) The Complaint provides no specific date when Plaintiff learned about the
9  suspension of his HELOC. It only states that in January 2008, Defendant allegedly mailed a letter
10 indicating that it had suspended Plaintiff's HELOC. (Id.) Based on the only listed date in the
11 Complaint of January 2008, the Court concludes that the Complaint is untimely.
12  Accordingly, the Court GRANTS Defendant's motion to dismiss claims one and two alleging
13 violations of TILA and Regulation Z as untimely. The Court GRANTS Plaintiff leave to amend the
14 Complaint to specifically allege when he discovered the alleged TILA violation.
15  Assuming that Plaintiff can cure the timeliness defect based on the arguments in his
16 opposition, the Court addresses the remaining arguments in Defendant's motion to dismiss.
17 **C.  First Cause of Action - Violations of TILA and Regulation Z**
18  Defendant argues that the complaint fails to allege any TILA violations beyond conclusory
19 allegations. Specifically, it contends that Plaintiff failed to allege with any factual specificity that as
20 of January 2008, his home had not significantly declined in overall value or in equity as defined
21 under TILA and Regulation Z. For example, Plaintiff failed to plead facts regarding the value of the
22 home when the HELOC was opened or its value when the HELOC was allegedly reduced or
23 whether he paid down the balance of his first mortgage.
24   Plaintiff opposes arguing that Defendant violated TILA and Regulation Z by "suspending
25 and reducing the Class members' HELOCs without first determining the level of available equity in
26 their property, which has not significantly declined within the meaning of Regulation Z, due to a
27 significantly higher home value than initially determined by Defendant's AVMs, and due to the
28 Class members paying down the balances on their first mortgages." (Compl. ¶ 35.) Plaintiff argues

that Defendant is trying to shift the burden on Plaintiff to prove that his home had not significantly declined in value.

Under TILA, a creditor may not unilaterally change any terms under an open end consumer credit plan under which extensions of credit are secured by a consumer's principal dwelling. 15 U.S.C. § 1647(c)(1). However, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an account under the plan during any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B). Similarly, under Regulation Z, a creditor may not change any term of a HELOC agreement, except that, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which (A) [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the plan." 12 C.F.R. § 226.5b(f)(3)(vi)(A).

The official staff commentary to Regulation Z issued by the Federal Reserve Board (the "Official Commentary") further explains that "[w]hat constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary according to individual circumstances. In any event, if the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline in the value of the dwelling for purposes of § 226.5b(f)(3)(vi)(A)." See 12 C.F.R. Pt. 226, Supp. 1, § 5b(f)(3)(vi) ¶ 6.[2] The Act states that "a creditor [need not] obtain an appraisal before suspending credit privileges . . . [but that] a significant decline must occur before suspension can occur." Id.

"In order to state a claim for violation of TILA and Regulation Z, Plaintiff must sufficiently allege that (i) Defendant reduced his HELOC (ii) during a period in which the value of his property did not decline to 'significantly less than the original appraised value of the dwelling.'" Hickman v.

---

[2]The court is to grant considerable deference to the Official Commentary of the TILA and Regulation Z. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980) (holding that "deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z[and] . . . [u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . .")

1  Wells Fargo Bank N.A., 683 F. Supp. 2d 779, 785 (N.D. Ill. 2010) (citing 15 U.S.C. §
2  1646(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A)).

3  In Hickman, Plaintiff's allegation that "on information and belief, neither Hickman's
4  property nor the property of the Class members has significantly declined in value" was sufficient to
5  withstand a motion to dismiss. Id. at 785. Rejecting Defendant's argument that the allegation were
6  no more than conclusions, the court explained that the complaint provided sufficient notice to
7  defendant of Plaintiff's claim. Id. In addition, Federal Rule of Civil Procedure 8 does not require
8  Plaintiff to specifically allege any factual support for its allegation that the value of his home did not
9  decline significantly. Id. The court explained that plaintiff would have the chance to show the
10 factual basis for his allegation that the value of his home had not declined significantly during
11 discovery. Id. at 786; see also In re Citibank HELOC Litig., No. C-09-0350 MMC, 2010 WL
12 3447724, at *3 (N.D. Cal. Aug. 30, 2010) (denying motion to dismiss where complaint stated that
13 there had not been a significant decline without providing specific facts).

14 Here, Plaintiff alleges that Defendant suspended his HELOC. (Compl. ¶¶ 15, 16.) Plaintiff,
15 on behalf of the class, claims that Defendant violated TILA and Regulation Z by suspending and
16 reducing the HELOC without a significant decline in their home values. (Compl. ¶¶ 3, 4, 35.) As
17 such, the Complaint properly alleges a claim under TILA and Regulation Z. Accordingly, the Court
18 DENIES Defendant's motion to dismiss for failing to state a TILA and Regulation Z violation.

19 Defendant also argues that the complaint contains no allegations that Plaintiff asked BANA
20 to reinstate his HELOC or undertook any action to do so. Plaintiff argues that he is not required to
21 allege that he demanded or sought to have his HELOC reinstated but is only required to show that
22 BANA reduced Plaintiff's HELOC and that the value of the property did not decline significantly
23 less than the original appraised value. (Opp. at 7-8.) Plaintiff also seeks leave to amend the
24 complaint to allege that he requested to have his HELOC reinstated should the Court require
25 otherwise.

26 In the complaint, Plaintiff alleges that there was a TILA violation when BANA failed to
27 reinstate his credit limits when the value of the homes was no longer in a significant decline.
28 (Compl. ¶ 39.) Plaintiff argues that alleging reinstatement is not necessary for a TILA violation. If

so, there is no need for an allegation that BANA failed to reinstate his HELOC. In addition, Plaintiff has not presented any facts that BANA failed to reinstate his HELOC. Accordingly, the Court GRANTS Defendant's motion to dismiss the allegation that BANA violated TILA by failing to reinstate his HELOC when the value of the homes was no longer in a significant decline. If Plaintiff seeks to allege a TILA violation based on BANA's failure to resinstate the HELOC, he may amend the complaint and properly allege facts to support the allegation.

Third, Defendant further contends that Plaintiff cannot establish a TILA violation based on the use of AVMs because the AVMs have been accepted as a valuation model by the Federal Deposit Insurance Corporation ("FDIC"). Plaintiff argues TILA violations based on the misuse of the AVMs. (Opp. at 8.) He argues that BANA used a faulty AVM to determine the value of Plaintiff's home and therefore a TILA violation occurred since the method used to support the HELOC suspension or reduction was faulty.

District courts have held that TILA violations can be based on the use of faulty valuation methods to support a HELOC suspension or reduction. Wilder v. JPMorgan Chase Bank, N.A. et al., 09cv834 -DOC(RNB) (C.D. Cal. 2010) at 5 (denying motion to dismiss on allegations that "reductions were based on false [AVM] valuations."); Kimball v. Washington Mutual Bank, et. al., 09cv1261-MMA(AJB) (S.D. Cal. April 5, 2010) at 8 (complaint stated a claim for relief when Plaintiff alleged that the decline in home value was inaccurate as a result of faulty valuation methods). As one court explained, the court's ruling is not based on the propriety of Defendant's use of the AVMs but the ultimate question is "whether Defendant reduced or suspended HELOCs in the absence of a significant decline in property values, in violation of TILA and Regulation Z." In re JPMorgan Chase Bank Home Equity Line of Credit Litigation, 794 F. Supp. 2d 859, 874 (N.D. Ill. June 30, 2011). "To the extent Defendant's use of AVMs contributed to improper reductions or suspensions of HELOCs, it is relevant, but Plaintiffs do not contend that the use of AVMs in and of itself violated TILA or Regulation Z. Id.

Similarly, Plaintiff alleges that the reduction or suspension of the HELOCs were determined by faulty AVM valuations. (Compl. ¶¶ 4-6; 37.) Therefore, Plaintiff has sufficiently alleged a TILA violation based on the use of allegedly faulty AVMs. Accordingly, based on the above, the Court

1  DENIES Defendant's motion to dismiss the first cause of action under TILA and Regulation Z based
2  on the use of faulty valuation method.

### D. Second Cause of Action - Declaratory Relief on Behalf of Injunctive Relief Subclass

Plaintiff seeks declaratory relief against Defendant for violations under TILA and Regulation Z for: "(i) using grossly inaccurate valuation methods to undervalue the properties and justify blanket suspensions and reductions of the HELOCs; and ii) suspending or reducing the HELOCs despite the properties securing the HELOCs not having declined significantly and despite Defendant not having a sound factual basis for concluding that there had been any such significant decline." (Compl. ¶ 48(a).)

Defendant argues that the court should dismiss the claim for declaratory relief because the remedies under TILA provides a complete remedy and declaratory relief adds nothing to Plaintiff's claims for monetary damages. Plaintiff contends that without discovery it is not known at this time whether statutory or even actual damages under TILA would be sufficient compensation. He also argues that there would be no prejudice in maintaining his claim for declaratory relief at this stage of the litigation and if Plaintiff's remedies prove to be adequate at a later date, the issue can be revisited. In its reply, Defendant concedes that pursuant to Hickman, the Court should grant the motion to dismiss and require plaintiff to plead his declaratory relief claim in the alternative.

28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The Declaratory Judgment Act does not grant litigants an absolute right to a legal determination." United States v. Washington, 759 F.2d 1353, 1356 (9th Cir. 1985). The court has discretion whether to grant declaratory relief. Id. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." Id. at 1357.

"'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and

1 controversy giving rise to the proceeding. It follows that when neither of these results can be
2 accomplished, the court should decline to render the declaration prayed.'" McGraw-Edison Co. v.
3 Preformed Line Pods. Co., 362 F.2d 339, 342 (9th Cir.1966) (quoting Borchard, Declaratory
4 Judgments 299 (2d ed. 1941)).

A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

In Hickman, the court dismissed the count for declaratory judgment based on the HELOC reductions and explained that the TILA statute contains "a comprehensive damages scheme, including actual damages, statutory damages, and attorneys' fees and costs." Hickman, 683 F. Supp. 2d at 790. In addition, the court explained that plaintiff had not established that the remedies contained in TILA would be ineffective or inappropriate. Id. Plaintiff subsequently filed a first amended complaint reasserting declaratory judgment in the alternative. See Hickman v. Wells Fargo Bank, N.A., 2010 WL 3833669 at 4-5 (N.D. Ill. May 11, 2010). Since Plaintiff requested declaratory judgment in the alternative, Court denied Defendant's motion to dismiss the declaratory judgment cause of action. Id. at 5. In another case, the court declined to strike Plaintiff's request for declaratory relief because TILA's statutory remedies may indeed prove insufficient. In re JPMorgan Chase Bank Home Equity Line of Credit Litigation, 794 F. Supp. 2d at 877 (does not state and it does not appear that the declaratory relief was pleaded in the alternative).

Here, Defendant acknowledges the Hickman case and states that the Court "should, at the very least, grant BANA's motion to dismiss Plaintiff's declaratory relief claim without prejudice and require that Plaintiff plead his declaratory relief claim in the alternative. (Reply at 4.) Accordingly, the Court GRANTS Defendant's motion to dismiss claim two for declaratory relief. Plaintiff shall be granted leave to amend the complaint to seek declaratory relief in the alternative.

**E.    Third Cause of Action - Breach of Contract**

Defendant argues that the breach of contract claim fails to state a claim because Plaintiff has failed to allege there has been a breach of a material term of the HELOC agreement because it lacks

1  specific allegations that his home did not significantly decline in value. Vess argues that the
2  complaint alleges a breach of the contract claim alleging that Defendant suspended his HELOC
3  agreement in the absence of a significant decline in property value as required under the contract.
4        In California, a cause of action for breach of contract requires (1) a contract, (2) plaintiff's
5  performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to
6  plaintiff. Hamilton v. Greenwich Inv. XXVI, LLC, 195 Cal. App. 4th 1602, 1614 (2011).
7        The HELOC agreement provides that BANA can reduce suspend or reduce the credit limit
8  during any period where "the value of the Property declines significantly below its appraised value
9  for the purposes of my Account." (Dkt. No. 8-3, D's Req. for Judicial Notice, Ex. A ¶ 11.A(1)).
10 The "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT" disclosure provides
11 that BANA can suspend or reduce his credit limit if "[t]he value of the dwelling securing the line
12 declines significantly below its appraised value for purposes of the line." (Dkt. No. 8-4, D's Req.
13 for Judicial Notice, Ex. B at 1.)
14       The contract allows BANA to reduce Plaintiff's credit limit as long as there was a significant
15 decline in the property. Plaintiff alleges that BANA breached a material term of the HELOC
16 agreement when it reduced his credit limit although his home value did not decline significantly.
17 (Compl. ¶¶ 3, 4, 5, 35, 53.)
18       The complaint alleges the existence of a contract between Plaintiff and Defendant. (Compl.
19 ¶ 50.) It alleges that Plaintiffs and the class members performed under their HELOC agreements
20 with Defendant and made all payments due to Defendant under the agreement. (Id. ¶ 52.) The
21 complaint alleges a breach of that contract when Defendant reduced the credit limit without a
22 significant decline in his home value. (Id. ¶ 53.) Plaintiff claims damages under the contract. (Id. ¶
23 55.) Plaintiff has sufficiently alleged a breach of contract claim. Based on the above, the Court
24 DENIES Defendant's motion to dismiss the breach of contract claim.
25 **F.  Fourth Cause of Action - Violation of California Business & Professions Code §17200**
26     **on Behalf of the Class**
27       Defendant argues that California's Unfair Competition Law ("UCL"), California Business &
28 Professions Code section 17200, claims for "unlawful" and "unfair" conduct should be dismissed

1  because Plaintiff has failed to plead any such conduct. It also argues that since the complaint fails to
2  state a TILA and Regulation Z claim, it must necessarily fail to state a UCL claim. In addition,
3  Defendant argues that the UCL claims for "fraudulent" conduct fails to comply with Federal Rule of
4  Civil Procedure 9(b) and Plaintiff lacks standing to bring the claims based on the letters. Plaintiff
5  argues that he has properly alleged an "unlawful," "unfair," and "fraudulent" conduct under the
6  UCL.

7  California Business & Professions Code section 17200 prohibits any "unlawful, unfair or
8  fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Since the statute is
9  written in the disjunctive, there are three separate types of unfair competition: (1) unlawful, (2)
10 unfair, or (3) fraudulent. Pastoria v. Nationwide Ins., 112 Cal. App. 4th 1490, 1496 (2003).
11 "'Section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the
12 unfair competition law makes independently actionable." Cel-Tech Comm., Inc. v. Los Angeles
13 Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). The scope of the law is broad. Id. "[A] lender's
14 violation of TILA can be an unfair business practice or act under [§ 17200]." Pacific Shore Funding
15 v. Lozo, 138 Cal. App. 4th 1342, 1347 (2006).

16 According to Plaintiff, the UCL claims under "unlawful" and "unfair" are based on the fact
17 that BANA reduced and suspended HELOCs without adequately ascertaining whether the securing
18 property significantly declined in value and failed to reinstate the HELOC. (Compl. ¶ 60.) In
19 addition, the claim is based on the allegation the AVMs were "not sufficient, reliable, or adequate."
20 (Id. ¶ 59.) Lastly, Plaintiff claims that the form letters BANA claims to have sent to Vess and other
21 class members that announced the HELOC suspensions "were deceptive and untrue because they
22 were based on AVMs that recklessly or intentionally undervalued the homes securing the Class
23 members' HELOCs." (Id.)

24 As discussed above, Plaintiff has stated a claim under TILA and Regulation Z as to the
25 allegation that BANA reduced the HELOCs without a significant decline in home values and used
26 faulty AVMs; therefore, in accordance with Defendant's reasoning and caselaw, Plaintiff has
27 sufficiently stated a violation of the UCL under the "unlawful" and "unfair" prong. See In re
28 JPMorgan Chase Bank Home Equity Line of Credit Litigation, 794 F. Supp. 2d at 890 ("Plaintiffs'

1  claims based on the "unlawful" prong of the California UCL succeed because they have pleaded a
2  violation of TILA and Regulation Z" ); Kimball v. Washington Mutual Bank, No. 09-cv-1261-
3  MMA(AJB), at 14 (S.D. Cal. 2010); Ralston v. Mortgage Investors Group., Inc., No. C 08-536 JF,
4  2009 WL 688858 at *7–8 (N.D. Cal. March 16, 2009) (stating that UCL claims based on TILA
5  violations are viable only to the extent that the TILA claims are viable); Velazquez v. GMAC
6  Mortgage Corp., 605 F. Supp. 2d 1049, 1067–68 (C.D. Cal. 2008) (Since plaintiffs made a claim for
7  violations of TILA, "the UCL claims are therefore not subject to dismissal on this ground.");
8  Amparan v. Plaza Home Mortg., Inc., 678 F. Supp. 2d 961, 975–77 (N.D. Cal. 2008).

9        Because Plaintiff has stated a claim under TILA and Regulation Z, Plaintiff has properly
10 alleged an "unlawful" and "unfair" conduct under the UCL.  However, the Court determined that
11 Plaintiff has not stated a claim under TILA and Regulation Z for BANA's failure to reinstate the
12 HELOC.  Accordingly, the Court DENIES Defendant's motion to dismiss claim four under the UCL
13 as to "unlawful" and "unfair"conduct as to the allegation that BANA reduced and suspended
14 HELOCS without a significant decline in the home values and that the AVMs were not reliable or
15 adequate.  The Court GRANTS Defendant's motion to dismiss claim four as to "unlawful" and
16 "unfair" conduct based on BANA's failure to reinstate the HELOC.

17       As to the allegation that the form letters were "deceptive and untrue," it appears Plaintiff is
18 arguing that BANA violated the "fraudulent" prong of the UCL.  This section is governed by
19 the"reasonable consumer test." Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010).  A
20 plaintiff may demonstrate a violation by "show[ing] that [reasonable] members of the public are
21 likely to be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).

22       A 17200 claim based on deceptive conduct is also subject to Rule 9(b). See Kearns v. Ford
23 Motor Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009) (affirming dismissal of 17200 claims based on
24 "fraudulent conduct" and "failure to disclosure information pertinent to consumers" where Plaintiff
25 failed to allege claims in conformity with Rule 9(b).  In Levin, the court dismissed Plaintiff's
26 allegation as failing to comply with Rule 9(b) based on its allegation that Citibank, "by engaging in a
27 'deceptive failure to disclose that it was going to reduce credit limits' also engaged in 'unfair
28 competition.'" Levin v. Citibank, 09cv350-MMC (N.D. Cal. Sept. 17, 2009).  Federal Rule of Civil

1  Procedure 9(b) provides that [i] alleging fraud . . . a party must state with particularity the
2  circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).
3        According to the complaint, the form letters "were deceptive and untrue because they were
4  based on AVMs that recklessly or intentionally undervalued the homes securing the Class members'
5  HELOCs." (Compl. ¶ 59.) Plaintiff does not provide any information as to "the who, what, when,
6  where and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106
7  (9th Cir. 2003) (citation omitted). In addition, based on the facts alleged in the complaint, Plaintiff
8  implies that he never received the letter allegedly sent in January 2008. In addition, Plaintiff claims
9  that "Defendant did not send the letters or notices it claims to have sent." (Compl. ¶ 21.) Therefore,
10 Plaintiff lacks standing to bring any claim based on the form letters. The Court GRANTS
11 Defendant's motion to dismiss claim four under the UCL as to the "fraudulent" conduct.

12 **G.   Fifth Cause of Action - Violation of California Business & Professions Code Section**
13 **     17200 on Behalf of Annual Fee Subclass**

14       Defendant contends that Plaintiff lacks standing to bring a UCL claim based on the annual
15 fee issue because the express terms of his HELOC agreement states that an annual fee will not be
16 charged. Plaintiff argues that the contract states that BANA will impose a $75 annual fee on Vess
17 and BANA has not represented that it never collected fees from Vess.
18       The contract specifically provides that Plaintiff "will not be charged an annual fee on this
19 loan." (Dkt. No. 8-3, D's Req. for Judicial Notice, Ex. A ¶ 7.A(1). The disclosure that Plaintiff
20 references does provide a contract form listing of annual fees by state; however, the annual fee
21 amount is blank on the disclosure. (Dkt. No. 8-4, D's Req. for Judicial Notice, Ex. B at 2.)
22       It is not clear from the complaint whether Plaintiff, himself, paid an annual fee to maintain
23 his HELOC account. The Complaint provides, "Plaintiff agreed to pay an annual fee in return for
24 access to a $60,000 HELOC." (Compl. ¶ 18.) This does not state that he actually paid a fee; it
25 merely states that he agreed to pay. Later, Plaintiff alleges that Plaintiff and the other Annual Fee
26 Subclass members paid Defendant an annual fee to maintain their HELOC accounts. (Id. ¶ 65.) In
27 the opposition, Plaintiff does not clarify and state whether he paid an annual fee. In fact, he states,
28 "[w]hether annual fees were imposed on Vess and the Annual Fee Subclass is a disputed factual

1  issue that cannot be resolved via a motion to dismiss." (Opp. at 13.)

2  Based on the record presented here, the Court concludes that Plaintiff lacks standing to
3  represent the annual fee subclass alleged in the fifth cause of action under the UCL because it is not
4  clear whether he paid an annual fee to maintain his HELOC account. The Court grants Plaintiff
5  leave to amend to properly and clearly state whether he paid an annual fee and thus, able to represent
6  the annual fee subclass. Accordingly, the Court GRANTS Defendant's motion to dismiss the fifth
7  cause of action without prejudice and with leave to amend.

**H.  Motion to Strike**

9  Defendant moves to strike the "Doe Defendants 1 through 50" in paragraphs 12 and 13 from
10 the complaint. Plaintiff opposes.

11 "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or
12 scandalous matter." Fed. R. Civ. P. 12(f). The decision whether to grant a motion to strike is within
13 the broad discretion of the district court. Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (9th Cir.
14 2000).

15 As a general rule, the use of fictitious Doe defendants is not favored in federal court.
16 Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Bogan v. Keen Corp., 852 F.2d 1238, 1239
17 (9th Cir. 1988). There is no provision in the Federal rules allowing the use of fictitious defendants.
18 Fifty Ass. v. Prudential Ins., Co., 446 F.2d 1187, 1191 (9th Cir. 1970).

19 In Molnar, the court explained why the joining of fictitious defendants is not warranted under
20 the Federal Rules of Civil Procedure. Molnar v. Nat'l Broadcasting Co., 231 F.2d 684, 687 (9 Cir.
21 1956). The court explained joining fictitious defendants violates jurisdictional principles because it
22 would be impossible for the court to determine the jurisdiction of the court. Id. It emphasized that
23 "[a]llegations founding jurisdiction of a federal court must be precise." Id.

24 Courts suggest that upon learning of the identity of the doe defendant, a party may seek to
25 amend the complaint and have the amendment relate back in time to the original filing if
26 circumstances are justified. Graziose v. American Home Prods. Corp., 202 F.R.D. 638, 643 (D.
27 Nev. 2001); see also Brass v. County of Los Angeles, 328 F.3d 1192, 1197–98 (9th Cir. 2003) but
28 see Gillespie, 629 F.2d at 642 (stating that in a situation where the identity of the alleged defendants

will not be known prior to the filing of the complaint, the plaintiff should be given an opportunity to dismiss the identify of the unknown defendants through discovery unless it is clear that discovery would not uncover the identifies or that the complaint would be dismissed on other grounds).

The Court exercises its broad discretion and concludes that the use of "Doe Defendants" in the complaint is inappropriate. Accordingly, the Court GRANTS Defendant's motion to strike the allegations as to the "Doe Defendants 1 through 50" in the complaint.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion to dismiss the complaint for failing to timely file the complaint and GRANTS Plaintiff leave to file an amended complaint to cure the timeliness issue within 30 days of the filing of this order. Assuming that Plaintiff is able to cure the deficiency in the complaint based on timeliness, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss. (Dkt. No. 8.)

Specifically:

1) the Court DENIES Defendant's motion to dismiss the first cause of action for failing to allege a violation of TILA and Regulation Z based on the fact that the value of Plaintiff's property did not decline significantly and based on the use of an allegedly faulty AVM. The Court GRANTS Defendant's motion to dismiss the allegation in the first cause of action that BANA violated TILA and Regulation Z by failing to reinstate his HELOC.

2) the Court GRANTS Defendant's motion to dismiss the second claim for declaratory relief;

3) the Court DENIES Defendant's motion to dismiss the third cause of action for breach of contract.

4) the Court DENIES Defendant's motion to dismiss the fourth cause of action for allegations of "unfair" and "unlawful" acts as to the allegation that BANA reduced and suspended HELOCS without a significant decline in the home values and that the AVMs were not reliable or adequate; and GRANTS Defendant's motion to dismiss claim four as to "unlawful" and "unfair" conduct based on BANA's failure to reinstate the HELOC; and GRANTS Defendant's motion to dismiss the fourth cause of action for allegations of "fraudulent" conduct.

5) the Court GRANTS Defendant's motion to dismiss the fifth cause of action.

      6) the Court GRANTS Defendant and Plaintiff's request for judicial notice. (Dkt. Nos. 8-2; 11-1.)

      7) the Court GRANTS Defendant's motion to strike the allegations as to "Doe Defendants." (Dkt. No. 9.)

      Plaintiff may file an amended complaint that cures the deficiencies discussed above no later than thirty (30) days from the date this Order is filed.

      IT IS SO ORDERED.

DATED: January 13, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge